FILED

DEC - 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

XCALIBER INTERNATIONAL
LIMITED, LLC,

Plaintiff,

- vs -

CHARLES C. FOTI, JR., in his official
capacity as Attorney General,
STATE OF LOUISIANA,

Defendant.

CASE NUMBER  1:06MS00545

JUDGE: Richard W. Roberts

DECK TYPE: Miscellanous

DATE STAMP: 12/08/2006

Case No.: 04-0069 Sect. S; Mag. 4
(United States District Court for the
Eastern District of Louisiana)

## MOTION FOR ENTRY OF PROTECTIVE ORDER IN RESPONSE TO
## SUBPOENA FOR PRODUCTION OF CONFIDENTIAL DOCUMENTS

Movant and non-party National Association of Attorneys General ("NAAG") hereby

moves the Court, pursuant to Fed. R. Civ. P. 45(c)(3)(B) and Local Rule 7, for entry of the

protective order attached hereto as Exhibit A.

The protective order will govern the production of confidential documents by non-party

NAAG in response to a subpoena served upon it in the District of Columbia by plaintiff Xcaliber

International Ltd., LLC ("Xcaliber"), arising from a case pending in the United States District

Court for the Eastern District of Louisiana, *Xcaliber Int'l Ltd., LLC v. Foti*, Case No. 04-0069.

While Xcaliber has declined to consent to NAAG's proposed order, the other party to the case,

defendant Charles C. Foti, Jr., in his official capacity as Attorney General, State of Louisiana

("Louisiana"), has no objection to this proposed protective order.

In support of this motion, NAAG states as follows:

1.     In the underlying case, Xcaliber argues that a 2003 amendment (the "Allocable

Share Amendment") to a Louisiana statute (the "Louisiana Escrow Statute") is preempted by the Sherman Act, or contravenes other constitutional rights of Xcaliber. The Louisiana Escrow Statute, and related Allocable Share Amendment, concern state escrow accounts required to be maintained by certain cigarette manufacturers (including Xcaliber) to cover potential tobacco health care costs associated with smoking cigarettes. These Statutes are related to the 1998 tobacco Master Settlement Agreement ("MSA") between major cigarette manufacturers and 46 Settling States, the District of Columbia, Puerto Rico and four territories.

2.      NAAG is an unincorporated association with headquarters in Washington, D.C. The members of NAAG are the Attorneys General of all the States, the District of Columbia, the Commonwealth of Puerto Rico, and four U.S. territories. Under Section VIII of the MSA, NAAG has responsibility for coordination and facilitation of the implementation and enforcement of the MSA on behalf of the States that are parties to the MSA.

3.      On or about August 8, 2006, Xcaliber served a non-party subpoena upon NAAG seeking production of documents, a true and correct copy of which is attached as Exhibit B.

4.      Following NAAG's submission of objections to the subpoena, NAAG and Xcaliber thereafter mutually agreed to narrow the scope of the requests, and otherwise have worked cooperatively to coordinate the response to the subpoena. During these discussions, NAAG advised Xcaliber that some of the documents sought by the subpoena contain confidential and sensitive commercial and trade information of the type protected from disclosure by Fed.R.Civ.P. 26(c)(7). NAAG and Xcaliber agreed that NAAG's production of documents would not occur until an appropriate protective order was entered.

5.      The NAAG confidential documents include but are not limited to documents and notices to and from PricewaterhouseCoopers ("PwC"), the Independent Auditor under the MSA,

that contain commercial and market share information regarding competing tobacco companies. These Notices are specifically designated as "confidential" pursuant to Section XI(a) of the MSA. Production of these documents would breach obligations created by that Agreement unless they are produced subject to a protective order that mandates that they be kept confidential.

6.    On November 20, 2006, the United States District Court for the Eastern District of Louisiana entered a protective order governing document production from the parties in the underlying case (the "Louisiana Order"). A true and correct copy of the Louisiana Order is attached hereto as Exhibit C. However, the Louisiana Order does not include any provision to allow non-parties to join in that Order.[1]

7.    NAAG therefore must seek a separate protective order from this Court that would govern NAAG's production of documents in the District of Columbia. NAAG's proposed order in Exhibit A essentially mirrors the Louisiana Order with one substantive difference.

8.    The Louisiana Order includes a provision whereby that Court can decline to allow previously-designated confidential documents to be filed under seal without further notice to the producing party. *See* Louisiana Order, at ¶11(a). Under the Louisiana procedure, a party that seeks to file a confidential document must first submit the confidential document *ex parte* to the U.S. Magistrate Judge in Louisiana, who then may confirm the document as confidential or may refuse to confirm it as confidential. If the Court refuses to confirm the document as confidential,

---

[1]    Although the Louisiana Order as filed includes an "Exhibit A" that purports to allow non-parties to join the Order, the inclusion of Exhibit A appears to be a typographical error left over from an earlier proposed version of the Order that was rejected by the Eastern District of Louisiana. There is no reference in the text of the Louisiana Order to an "Exhibit A" and U.S. Magistrate Judge Karen Wells Roby, who entered the Louisiana Order, reportedly informed the parties that she believed that third-parties such as NAAG were outside her jurisdiction.

the party cannot file it under seal – thereby apparently allowing the document to be publicly disclosed without any opportunity for the producing party that designated it as confidential to challenge or review the Louisiana Court's determination, since the whole process takes place *ex parte*.

9.     NAAG believes this procedure is unreasonable and especially unfair to third-parties such as NAAG that produce documents in response to a subpoena outside of Louisiana but then have no further ability to protect their disclosure under the procedure adopted by the Louisiana Court if that Court for some reason disagrees with NAAG's confidentiality designation.

10.     NAAG's proposed protective order follows a similar procedure of having the documents to be filed under seal initially presented to the Louisiana court *ex parte*, but if the Eastern District of Louisiana declines to allow NAAG confidential documents to be filed under seal, the submitting party then has the option to return to this Court for a determination of non-confidentiality or to refrain from filing such documents in that case.  *See* Exhibit A, Proposed Order, at ¶11(a).  Thus, following production, the NAAG confidential documents will be subject to the same conditions and restrictions on use in the Eastern District of Louisiana as the other confidential documents produced by the parties, other than the modified procedure discussed above.   NAAG's proposed order seeks to strike a balance between maintaining a close compliance with the protective order procedures set up by the Eastern District of Louisiana while at the same time providing NAAG as the producing party with the requisite procedural opportunities to seek to protect the confidentiality of its documents.

11.     This Court has jurisdiction to enter this protective order because the subpoena issued from this district, where NAAG is located.  *See* Fed.R.Civ.P. 45(c)(3)(B).

12.     Louisiana has no objection to the entry of this protective order for the NAAG documents.  Xcaliber has declined to consent to the entry of NAAG's proposed order, arguing that subsequent use or treatment of the NAAG documents in the underlying litigation is an issue solely for determination by the Eastern District of Louisiana.

WHEREFORE, for the foregoing reasons, NAAG requests that the Court enter the attached protective order.

Dated: December 8, 2006

Respectfully submitted,

_____
Robert P. Fletcher (Bar No. 375543)
Leslie Paul Machado (Bar No. 472395)
John M. Bramlette
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington D.C.  20004-2128
Tele: (202) 585-8000
Fax: (202) 585-8080

*Attorneys for the National Association of Attorneys General*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2006, I sent a copy of the foregoing

(including exhibits) to the following via electronic mail:

Kyle M. Keegan, Esq.
Christopher D. Kiesel, Esq.
J. Brian Juban, Esq.
ROY, KIESEL, KEEGAN & DeNICOLA
2355 Drusilla Lane
Baton Rouge, LA 70809
*Attorneys for XCaliber International Limited, LLC*

Thomas L. Enright, Esq.
Assistant Attorney General
Louisiana Department of Justice
P.O. Box 94005
1885 North 3rd Street, 4th Floor
Baton Rouge, LA 70804-9005
*Attorney for Charles C. Foti, Jr., in his official capacity as Attorney General, State of Louisiana*

Leslie Paul Machado

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

XCALIBER INTERNATIONAL
LIMITED, LLC,

Plaintiff,

                 - vs -

CHARLES C. FOTI, JR., in his official
capacity as Attorney General,
STATE OF LOUISIANA,

Defendant.

Misc. No.: _____

Case No.: 04-0069 Sect. S; Mag. 4
(United States District Court for the
Eastern District of Louisiana)

## PROTECTIVE ORDER

IT IS HEREBY ORDERED, that each of the parties and the National Association of Attorneys General ("NAAG"), shall be governed by the following terms and conditions in connection with the production of NAAG Confidential Information (as defined herein) by NAAG in the District of Columbia.

1.     Definitions.

       a.     The term "NAAG Confidential Information" means any information, whether oral or in documentary or other tangible form, so designated by NAAG that it reasonably and in good faith believes is of the type protectable under Fed.R.Civ.P. 26(c)(7).

       b.     The term "disclose" means to show, give, make available or communicate, in any fashion, to any person, any information, document, information concerning the content of any document, or any portion of the information contained in any document, furnished by NAAG in this action.

c.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term in Fed.R.Civ.P. 34(a).  A draft or non-identical copy is a separate document within the meaning of the term.

d.    The term "person" means any natural person, corporation, partnership, sole proprietorship, group, association, organization, business entity, governmental body, or agency.

e.    The term "qualified person," in addition to the parties themselves, includes (i) outside counsel engaged to represent one of the parties to this action, including necessary legal assistants and clerical employees actually assisting such counsel and outside vendors engaged by such counsel to scan and/or code documents; (ii) in-house lawyers who are engaged in preparation for trial and trial of this litigation, including necessary legal assistants and clerical employees actually assisting these persons; (iii) outside independent experts and consultants of the parties who are formally retained by and actively assisting counsel identified in (i) and (ii) in this action and any necessary assistants and stenographic and clerical employees under their direct supervision and employed by them or their employer or organization; and (iv) the court reporters.

f.    The term "receiving party" means any person to whom information is disclosed in this action in response to any discovery method permitted by the Federal Rules of Civil Procedure.

2.    Any information supplied in documentary or other tangible form may be designated by NAAG as NAAG Confidential Information by placing or affixing on each page of such document, or on the face of such thing, the legend "CONFIDENTIAL" (uppercase or lowercase).  In the case of documents or information produced in any electronic form, the legend

"CONFIDENTIAL," when placed or affixed on the face of such thing, shall designate such thing and information therein to be NAAG Confidential Information. In the case of documents produced prior to the entry of this Order, NAAG shall have fifteen (15) days from the date of entry of this Order to designate in writing each document containing NAAG Confidential Information and each such designated document shall thereafter be treated as NAAG Confidential Information under the terms of this Order.

3.      If the receiving party disagrees with the confidentiality designation by NAAG, said receiving party shall notify counsel for NAAG in writing. Counsel for NAAG and the receiving party shall attempt to resolve such dispute within five (5) business days after receipt of the receiving party's notice. If the dispute cannot be resolved, the party seeking disclosure, upon no fewer than three (3) business days' written notice to counsel for NAAG, may, by specifying the basis on which it claims that such designation is improper or that such disclosure is appropriate, seek a ruling from this Court that the information is not properly designated. Pending a determination by this Court, such information shall be treated as NAAG Confidential Information under this Order.

4.      NAAG Confidential Information may be disclosed only to qualified persons. All qualified persons in possession of NAAG Confidential Information shall execute Exhibit A ("Qualified Persons Bound by Protective Order") and, in so doing, shall provide an exhaustive list of all individuals who meet the definition of a qualified person and to whom NAAG Confidential Information may be disclosed under this Order. Prior to any disclosure, qualified persons shall read this Order and (i) agree to be bound by the terms thereof, (ii) agree to maintain said information in confidence, and (iii) agree not to disclose NAAG Confidential Information to anyone other than as set forth herein.

5.     Any summary, compilation, notes, or copy or copies containing NAAG Confidential Information shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, copy or copies, electronic image or database is derived.  Any such summary, compilation, notes, copy or copies which constitute attorney work product shall not be subject to the return or destruction provisions in paragraph 14 of this Order.

6.     During a deposition or pretrial evidentiary hearing in this matter, if a question is asked that would result in the disclosure of NAAG Confidential Information, a party or NAAG may designate the response as NAAG Confidential Information, prior to the response being given, by stating on the record that the answer is "CONFIDENTIAL," or within fifteen (15) business days after receipt of the transcript, by notifying counsel for the parties in writing that the answer is "CONFIDENTIAL."  All such transcripts shall be treated as NAAG Confidential Information until fifteen (15) business days after receipt thereof by counsel for the parties and counsel for the witness.  Once an answer to a question is designated as NAAG Confidential Information, only qualified persons may be in attendance.  The portion of the transcript corresponding to the designated answer shall be marked by the reporter and videographer as "CONFIDENTIAL."   Each party shall cause each copy of those portions of the transcript in its custody or control or that comes into its custody or control to be immediately marked as "CONFIDENTIAL." A party may also stamp "Portions of the Transcript Contain Confidential Information" on the front of the transcript, or alternatively segregate that portion of the testimony designated as containing NAAG Confidential Information.

7.     Disclosure of NAAG Confidential Information may be made to experts who are formally retained by and actively assisting counsel identified in 1(e)(i) and (ii) in the preparation

and trial of this action. The party retaining any such expert shall provide opposing counsel with the name of said expert on Exhibit A ("Qualified Persons Bound by Protective Order") or, if Exhibit A has been previously executed, on an addendum thereto.

8.    In the event any document is produced that NAAG later claims is protected by attorney-client privilege, work product doctrine or other privilege or immunity, the receiving party shall, within five (5) business days of receipt of a written request by NAAG, return the original to NAAG, destroy all copies thereof, as well as, all notes, memoranda or other documents that summarize, discuss or quote the document, and delete any copy of the document, or any portion thereof, from any word processing or data base tape or disk it maintains. Production of privileged, work-product-protected, or otherwise immune documents in the course of discovery in this action shall not constitute a waiver of any privilege, work product protection or immunity, either as to the produced document or as to any other documents or communications. Return of a document for which NAAG has asserted a claim of privilege, work-product-protection, or immunity under this paragraph shall be without prejudice to the receiving party's right to seek an order from the Court directing production of the document on the ground that the claimed privilege, work product protection or immunity is invalid or inapplicable, provided, however, that mere production of the document in the course of this action shall not be a ground for asserting waiver for the privilege, protection or immunity.

9.    This Order is entered solely for the purpose of facilitating the production of confidential documents by NAAG to the parties in this action without unnecessary involvement of the Court. Nothing in this Order, shall be deemed to have the effect of (i) an admission or waiver, including waiver under the rules of evidence, by any party or other subscriber to this Order; (ii) altering the confidentiality or non-confidentiality of any such information; or (iii)

altering any existing obligation of any party or subscriber, or the absence of such obligation.

10.   This Order shall be without prejudice to the right of any party or other subscriber to this Order (i) to bring before this Court, at any time, the question of whether any particular document or information is NAAG Confidential Information or whether its use otherwise should be restricted or (ii) to present a motion to this Court under Fed.R.Civ.P. 26(c), for a separate protective order as to any such particular document or information, including restrictions differing from those specified herein. This Order shall not be deemed to prejudice any party in any way in any future application for modification of this Order.

11.   Items Filed with the U.S. District Court for the Eastern District of Louisiana ("Eastern District of Louisiana").

a.   Prior to the filing of documents containing NAAG Confidential Information, the filing party must submit the documents in the form of an *ex parte* motion to the Eastern District of Louisiana for review and approval of the documents' confidential status, along with notice to NAAG and opposing counsel.  NAAG Confidential Information which, upon review, is confirmed as confidential information by the Eastern District of Louisiana, shall be filed as indicated below.  If a document designated as containing NAAG Confidential Information is determined not to be confidential by the Eastern District of Louisiana, the submitting party may seek the removal of the confidential designation in this Court pursuant to the provisions of this Order, or shall refrain from filing such documents in the Eastern District of Louisiana.

b.   All documents, including pleadings, motions, and other papers, containing NAAG Confidential Information that are filed in this Court or in the Eastern District of Louisiana shall be filed in a sealed envelope or other appropriate sealed container on which shall

be endorsed the title of this action, the word "CONFIDENTIAL," and a statement substantially in the following form:

## FILED UNDER SEAL

By order of the Court, entered on [date], this envelope is to remain sealed, and the Clerk of the Court shall not reveal the contents thereof to any person until further order of the Court.

All information subject to confidential treatment in accordance with the terms of this Order that is filed with the Court, and any pleadings, motions or other papers filed with the Court disclosing any NAAG Confidential Information, shall be filed and kept under seal until further order of the Court. Where possible, only confidential portions of filings with the Court shall be filed under seal.

12.    The parties and NAAG shall attempt to agree upon procedures to prevent disclosure of NAAG Confidential Information at any hearing or trial. Prior to such hearing or trial, the parties and NAAG shall submit any disputes relating thereto to the Eastern District of Louisiana for resolution.

13.    If NAAG Confidential Information in the possession, custody or control of any receiving party is sought by subpoena, request for product on of documents, interrogatories, or any other form of discovery request or compulsory process, including any form of discovery request or compulsory process of any court, administrative or legislative body, or any other person or tribunal purporting to have authority to seek such information by compulsory process or discovery request, including private parties, the receiving party to whom the process or discovery request is directed, shall (i) on or before the second business day after receipt thereof, give written notice of such process or discovery request together with a copy thereof, to counsel for NAAG; and (ii) cooperate to the extent necessary to permit NAAG to seek to quash or

7

modify such process or discovery request.

14. Upon final termination of this action, including all appeals, all parties and experts and consultants shall (i) at the option of NAAG, return to NAAG or destroy all originals of material produced and designated as NAAG Confidential Information and all identical copies, whether in whole or in part, of such documents, and (ii) destroy all copies thereof, as well as all notes, memoranda, or other documents that summarize, discuss, or quote materials produced and designated as NAAG Confidential Information, except that, with respect to word processing and database tapes and disks, such tapes or disks shall be destroyed or erased to the extent practicable. Notwithstanding the above, outside counsel for each party shall be entitled to retain attorney work product, and copies of any documents that have been filed with the Court or admitted into evidence and that contain or refer to information designated as NAAG Confidential Information, provided that all such documents shall remain subject to this Order. Counsel of record for the parties shall certify in writing to each producing person that it has complied with the foregoing provisions.

15. This Court shall retain jurisdiction of this matter for purposes of enforcing this Order.

16. This Order shall survive and remain in full force and effect after termination of this action.

DATED: This ___ day of_____, 2006.

SO ORDERED:

_____
JUDGE, UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

8

## **EXHIBIT A**

### **Qualified Persons Bound by Protective Order**

Undersigned counsel does hereby certify, on behalf of [signatory to Protective Order], that the following identified individuals constitute an exhaustive list of all individuals who meet the definition of "qualified person" and to whom any NAAG Confidential Information may be disclosed as provided in the attached Protective Order, dated _____ , 2006, entered by the United States District Court for the District of Columbia in the action captioned, *XCaliber International Limited, LLC v. Charles C. Foti, Jr., in his capacity as Attorney General for the State of Louisiana*, Misc. Case No. _____.

All individuals listed have, prior to any disclosure of NAAG Confidential Information, read the attached Protective Order and have agreed to be bound by the terms thereof.

| Individual | Position of Employment or Reason for Qualified Person Status |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

_____
Signature of Counsel for _____

Date:_____

10

Copies to:

Robert P. Fletcher, Esq.
Leslie Paul Machado, Esq.
John M. Bramlette, Esq.
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington D.C. 20004-2128
*Attorneys for National Association of Attorneys General*

Kyle M. Keegan, Esq.
Christopher D. Kiesel, Esq.
J. Brian Juban, Esq.
ROY, KIESEL, KEEGAN & DeNICOLA
2355 Drusilla Lane
Baton Rouge, LA 70809
*Attorneys for XCaliber International Limited, LLC*

Thomas L. Enright, Esq.
Assistant Attorney General
Louisiana Department of Justice
P.O. Box 94005
1885 North 3rd Street, 4th Floor
Baton Rouge, LA 70804-9005
*Attorney for Charles C. Foti, Jr.,*
*in his official capacity as Attorney General, State of Louisiana*

08/02/2006  12:38    22532E   ⁻2        DOJ TOBACCO UNI⁻           PAGE    05/16
AO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

## SUBPOENA IN A CIVIL CASE

Xcaliber International Limited, LLC, et al.

## V.

Charles C. Foti, Jr., in his official capacity of
Attorney General, State of Louisiana

CASE NUMBER:[1]   04-0069
Section "S" Mag. 4
(Eastern District of Louisiana)

TO:  National Association of Attorneys General
750 First Street, N.E., Suite 1100
Washington, D.C. 20002

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| Place of Testimony | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):    **See Schedule A, attached**

| PLACE | DATE AND TIME |
| --- | --- |
| National Association of Attorneys General<br>750 First Street, N.E., Suite 1100<br>Washington, D.C. 20002 | September 5, 2006 at<br>10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE(INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>_____, Attorney for Plaintiff, Xcaliber Int'l Limited, LLC | DATE<br>July 31, 2006 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Chris D. Kiesel, 2355 Drusilla Lane, Baton Rouge, LA 70809        (225) 927-9908

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1]If action is pending in district other than district of issuance, state district under case number.

AU 00 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVER ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D;

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1 ) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at anytime for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person,

except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents , communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## I.    DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.    "You" or "NAAG" refers to the National Association of Attorneys General and any of its parents, subsidiaries, divisions, partnerships and branches; its national, regional and local offices; all present and former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants and all other persons acting on its behalf.

2.    "Document" has the same meaning as "writings," which is defined in Fed.R.Civ.P.34 and Fed.R.Evid.1001 including, but not limited to, any electronically stored documents, preliminary versions, drafts or revisions.

3.    "Person" refers to any natural person, proprietorship, public or private corporation, partnership, joint venture, trust, association, company, firm, government entity (including any government agency, board, authority, commission, or political division or department thereof), or any other form of business or legal entity, organization, or arrangement.

4.    "Communication" refers to every manner or means of disclosure, transfer or exchange or information (in the form of facts, ideas, inquiries or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery or otherwise.

5.    "Concerning" means relating to, referring to, describing, evidencing, regarding or constituting.

6.    "Referring" or "relating" means all documents which explicitly or implicitly, in whole or in part, were received in conjunction with, or were generated as a result of, the subject matter of the request or interrogatory, including, but not limited to, all documents which reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

7.    "Meeting" refers to the contemporaneous presence of any natural persons, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal, occurred in connection with some other activity, or was by telephone or teleconferencing.

8.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that otherwise might be construed to be outside of its scope.

9.    "MSA" means the Master Settlement Agreement.

10.   "Escrow Statute" includes the Model Escrow Statute that is Exhibit T to the MSA; La.Rev. Stat. §§13:5061 *et seq.*; and Louisiana's 2003 amendment to its Escrow Statute that is the

subject of Xcaliber's challenge in this lawsuit.

11.     "NPM," "PM," "OPM," "SPM," and "Exempt SPM" (or grand-fathered SPM) refer to those
        cigarette manufacturers as described in the MSA.

## II.    INSTRUCTIONS

1.      All documents shall be produced as they are maintained in the ordinary course of business
        and shall be produced in their original folders, binders, covers or containers, or facsimile
        thereof, i.e, documents maintained electronically shall be produced in the manner in which
        such documents are stored and retrieved.

2.      In responding to these requests, you shall produce all responsive documents (including those
        stored electronically) which are in your possession, custody or control, or in the possession,
        custody or control of your respective directors, officers, agents, employees, attorneys,
        accountants or other representatives.

3.      Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and
        copying by Plaintiff original documents including those stored electronically as they are kept
        in the usual course of business. If the original is not in your custody, then a copy thereof, and
        all non-identical copies which differ from the original or from the other copies produced for
        any reason, including, without limitation, the making of notes thereon.

4.      To the extent that there are documents containing information relevant to these requests that
        are currently in electronic format, the documents are to be produced in their native format
        (e.g., Word, Excel, or Word Perfect).

5.      If the production of documents is withheld on the ground of privilege, please provide a
        privilege log or other specification in accordance with Fed.R.Civ.P.26(b)(5).

6.      If a portion of any document responsive to these requests is withheld under claim of
        privilege, any non-privileged portion of such document must be produced with the portion
        claimed to be privileged redacted.

7.      If a document responsive to these requests was at any time in your possession, custody or
        control but is no longer available for production, as to each such document state the
        following information: (A) whether the document is missing or lost; (B) whether is has been
        destroyed; (C) whether it has been transferred or delivered to another person and, if so, at
        whose request; and (D) if the document has been otherwise disposed of, state the
        circumstances surrounding the date and nature of such disposition.

8.      Unless otherwise stated, the time period that applies to each request for production of
        documents is from January 1, 1998 to present.

**Schedule A**
**National Association of Attorneys General Subpoenaed Documents**

1.   All data compilation documents from You, directed to You or shared with You, concerning the amounts of MSA payments made by cigarette manufacturers each year since MSA payments have occurred, including all adjustments thereto.

2.   All document concerning the Louisiana Escrow Statute, including the 2003 amendment thereto.

3.   All documents concerning any effect on price competition among manufacturers in the U.S. cigarette market as a result of the Louisiana Escrow Statute.

4.   All data compilation documents describing increases and decreases in the United States and Louisiana market share of cigarette manufacturers.

5.   All documents received from Price Waterhouse Coopers reflecting any offset or adjustments to the calculations of amounts due by cigarette manufacturers under the MSA.

6.   All documents generated in connection with meetings held between You and the Louisiana State Attorney General's Office and/or PMs concerning any effect on competition resulting from the Louisiana Escrow Statute.

7.   All documents originating from You, directed to You or shared with You, concerning the allocable share refund provisions of the Escrow Statute, or the repeal of the allocable share refund provisions.

8.   All documents originating from You, directed to You or shared with You, concerning taxes or escrow amounts to be paid only by NPMs.

9.   All documents concerning any and all acts committed by any NPM which You believe may give rise to a claim against such NPM by the State of Louisiana which could be satisfied in whole or part by such NPM's escrow deposits.

10.   All documents concerning the September 2004 NAAG meeting with the State Attorneys General in Vermont.

11.   All documents originating from You, directed to You or shared with You, concerning NPM adjustments under the MSA.

12.   All documents containing communications between You and the office of the Louisiana Attorney General, its agents, employees or representatives in connection with the Louisiana Escrow Statute.

13.   All documents concerning strategies or efforts to cause NPMs to join the MSA.

14.   All documents concerning strategies or efforts to reduce the market share of NPMs and increase the market share or competitive position of PMs.

15.   All documents concerning the effect of NPM sales on MSA payments to the State of Louisiana.

16.   All documents concerning PM complaints that NAAG or Louisiana is not diligently enforcing the Escrow Statutes.

17.   A copy of the 2006 arbitration decision related to certain PMs withholding portions of their MSA payments to the States based on a determination that the MSA has been a significant factor in their loss of market share.

18.   All documents evidencing the actual amount of health care costs incurred by the State of Louisiana as a result of the consumption of cigarettes.

19.   All documents concerning the rate of and reasons for the decline in United States cigarette consumption.

20.   All documents indicating the percent of youths who smoke NPM cigarettes.

21.   All documents (not including pleadings filed in this litigation) relating to concerns or comments by any Person that any aspect of the Louisiana Escrow Statute or Amendment thereto is anticompetitive.

22.   All documents (not including pleadings filed in this litigation) referring to or discussing Xcaliber International Limited, LLC as it relates to the MSA or Louisiana Escrow Statute.

23.   All documents concerning or related to the January 20, 2004 meeting between representatives from NAAG, the PMs and others described in the attached January 25, 2004 inter-office memorandum to the file by Philip Morris' Virginia Murphy.

24.   All documents concerning or related to the "NAAG proposal" or "NAAG draft" described in this January 25, 2004 memorandum by Virginia Murphy.

MAR. 2. 2004  4:18PM    PHILIP MORRIS                          NO. 369   P. 1

PHILIP MORRIS USA                 INTER-OFFICE CORRESPONDENCE
                                  120 PARK AVENUE, NEW YORK, NY 10017-5592

To:    MSA File                   Date:  January 26, 2004

From:  Virginia Murphy                   COPY

Subject: January 20th Meeting with NAAG, OPMs, SPMs

Host – Covington & Burling – DC

NAAG/State Representatives – Ressler, Bill Lieblich, Peter Levin, Michael Herring, Mark Greenwold, Tony Ogden, Greg Wilson

Industry Representation – SPMs (Latham), RJR, Lorillard, B&W, PM USA – legal and government affairs.

David Remes (speaking for RJR and B&W) opening – general discussion of legislative initiatives – using terminology for the day:

  RJR "Equity Assessment"
  NAAG proposal

Mark Greenwold to David – Start with yours. Ours is not a legislative proposal at this point – it's a proposal for discussion. Where we come out on it depends on what you intend to do with yours. Allocable share is the only piece of legislation that is an all-state objective and NAAG priority.

David to Mark – tell us your objections to the equity assessment.

Mark – NAAG problems with equity assessment

- 62 states – tough for NAAG to give quick turnaround on requests for support
- when the bill hit in Michigan – no real time to respond and AG stayed out
- there is a formal NAAG resolution in favor of allocable share – but not equity fee
- states' allocable share objective is to impose escrow obligation on NPM equal to that imposed on an SPM without grandfather share. Equity fee imposes obligations on NPMs in excess of those imposed on SPMs and OPMs.
- it is inappropriate to impose excessive obligations on NPMs. One thing to level the playing field, another to unbalance it.
- As a policy matter, the states are under attack for being too close to participating manufacturers.
- States are in favor of balancing but uncomfortable with legislation that would side them too closely with participating manufacturers.
- Potential for legal challenges – NAAG thinks substantial risk that Michigan will be challenged and is vulnerable to constitutional attack. More vulnerable than other types of proposed legislation.
- Freedom Holding – NAAG wants to avoid anything that directly involves states in

1

2086154413

marketplace. Entire schema of MSA is currently under attack, and we do not want to increase that vulnerability and put that scheme at risk. [Lieblich and Greenwold – NY still up in the air on what to do next in Freedom Holdings case.]

- Think equity fee will make it harder to get allocable share enacted.
- Media is reporting that AGs and PMs are conspiring to hurt the little guy.
- We want to concentrate on allocable share and think the best thing that could happen is to have that be the only thing pending in the states.

David Response:

- We're not trying to enlist support of AGs – happy to have AGs remain neutral.
- Legal vulnerability – we can't prove a negative but think will equity assessment will survive constitutional challenge.
- Freedom Holdings – equity fee legislation doesn't make the situation worse than it is (Wilson response – I think this makes things much worse. Taking away argument that NPM costs are lower than PMs so can be no claim of output restriction or market allocation. Arguments would be much harder with this legislation in place. Escrow plus fee is far too high to cover administrative costs (Mozinga – you get escrow back after 25 years. Wilson – but they can't take a tax deduction and lose use of money.)

Mark – purpose of allocable share was to create a level playing field. How do we now say we need so much more to achieve a level playing field?

David – equity assessment makes it easier to pass allocable share. If anything, makes it easier.

M. Shannon (Lorillard) – 19 states passing allocable share is a tremendous success. States in which we've had difficulty passing – the difficulty did not relate in any way to equity assessment. [Shannon is clearly supportive of equity assessment. Didn't realize Lorillard so clearly on board.]

Mark – NPMs have a huge advantage in the escrow loophole – once closed they will be disadvantaged by their lack of a release. Some distributors won't carry NPM product because they think it's risky.

Herring – Michigan was hybrid of equity fee and complementary legislation. If doing part, should do all.

David – Passed in Michigan 85-12.

Wilson – in some states, the AG will be very involved due to formal process for constitutional review. Some states you cannot avoid due to review process.

David insistent this need not be an AG issue.

Herring – It is viewed that way because it has been tied to allocable share.

Bottom-line – David thinks AGs can distance themselves. NAAG and AGs think they cannot. Herring notes media ties AGs to the equity assessment.

2                2086154414

PAGE 13/16
08/02/2006  12:38    22532F    72    DOJ TOBACCO UNT

MAR. 2. 2004  4:18PM    PHILIP MORRIS                NO. 369    P. 3

Mozinga – during our November meeting, the AGs said nine states critical – "RJR worked our buns off to accomplish this goal. We did so – so what's next?"

Mark – states' exposure to bankruptcy is a serious concern. But we can't address all of those concerns at the same time as we're accomplishing allocable share.

B&W lobbyist – NPMs have an option to become an SPM

Lieblich – 4th Circuit and Minnesota Court were both looking at a fee in lieu of an escrow – not in addition to an escrow. David – we can read cases differently. Lieblich – but who is left to defend the legislation. Odgen – true – cannot leave AGs out of this – have a very active role in defending this legislation.

Mark – we are seriously concerned that an attack would not be on equity assessment only, but rather on the entire MSA scheme.

B&W Lobbyist offer – what if we back off in the 9 critical states you identified.
1. Not press equity assessment in nine states
2. Not link equity assessment to allocable share in any state –
Can be be assured of your neutrality?

Mark – we prefer that nothing happen anywhere. Can't comment for every state and in states that already passed allocable share – the equity assessment is not welcome.

Ressler – as state rep, I'll tell you this is not NAAG stirring the pot. How many times can you go back to the wall with the legislature and say this is what we need to fix the MSA problem. Should take it in waves and wait for one step at a time to work before adding to it.

Ressler – if we were looking to replace escrow scheme with another scheme – there would be things to talk about. We're now trying to improve the current scheme, not replace it with another.

David – what you proposed last week (the NAAG Proposal) would be such a replacement rather than an improvement.

Mark – what are we doing in Virginia? The wolf is at the door. We cannot leave this room without deciding what we're going to do. The AG wants an answer.

John Rainey – this is a purely political situation for Jerry Kilgore. He wants all the companies to come meet with him, including NPMs. Deadline in Virginia is Friday for filing legislation to be considered by General Assembly.

John also explains Kentucky situation with NPMs spreading the word that there is an alternative to allocable share available.

Bob – B&W lobbyist – if we cannot pass allocable share in Virginia, West Virginia and North Carolina, what does that do to the scheme? Mark – hurts it a lot.

Ressler – if not confused by other legislation, we will get allocable share in at least half the states, including Pennsylvania.

3          2086154415

Mark — we're reporting to you what we've heard from states on a very long all state call.

David — what if local industry team thinks you can get both. Mark — we don't think equity assessment is good policy. Tony — we were successful with coordinated strategy. This is not one.

David request — tell us about NAAG proposal.

Mark on NAAG Proposal:

- it is in a formative stage, not a mature, considered proposal the states are behind.
- We want a long, full discussion of it and alternatives. Thought it would take a year to work out the details. We know there are issues to be addressed.
- The states are concerned with potential for an OPM bankruptcy. Feel terribly exposed. Serious, unpredictable risk. States have had lengthy discussions of what happened in Price case.
- The objective of the NAAG Proposal is to obligate the companies to pay no more in tax than they are currently obligated to pay under MSA.
- Draft was circulated as a draft only for discussion.
- Would largely replace the escrow system with payments to be made to the states. Much easier to administer than escrow system.
- States think taxing approach would be easier to administer and enforce than the escrow system.
- There are creative, unscrupulous people on the other side — administering the escrow statutes is extremely difficult.
- And now we have Freedom Holding judge extolling virtues of a flat tax the court said would not be anti-competitive.
- We're open to suggestions and completely different alternatives.
- Draft was circulated to the states for comment. We're just starting.

Ressler — hasn't been out there long enough to know if the end result will be something simple.

Wilson — origin of the draft was Minnesota.

Mark — combo of Minnesota and Illinois (Bob — and equity assessments).

Mark — we can't support bond cap. Too many states on too many sides and it impacts far more than tobacco. But we'd like to be kept informed on where bond cap is.

Henry Turner — with respect to MSA specific bond cap efforts — we would appreciate NAAG's assistance.

DFK — Request for closure and clarity on next steps and positions of those in room.

Mark — we will support allocable share. There is nothing we can do about what the NPMs do with the NAAG Proposal now that they have it.

Meyer — yes, you can — you can say it's not ready for prime time.

4      2086154416

MAR. 2.2004  4:19PM    PHILIP MORRIS                    NO. 369    P. 5

Tony -- are the Participating Manufacturers in a position to say they will not push equity assessment anywhere in exchange for states taking the draft NAAG Proposal off the table?

Herring -- there is a risk that the states will go with NAAG draft if displeased with equity assessment.

Wilson -- will be tough to get this Genie back in the bottle. But it will be far more difficult if equity assessment is out there.

[Got lost on what Gary Wilson is talking about re. smoking and health groups -- tobacco control interest in tax]

Peter Levin -- look like boy who cried wolf pushing allocable share and equity assessment. You're stretching your credibility.

Michael Shannon -- all over the lot on costs of MSA administration.

Tony -- are we willing to have an agreed stand-down on these two legislative initiatives?

Bob B&W -- can't agree to stand-down here and now. Need to take issue to others in the company. But very interested in participation in working group on solutions [which he assumes will be lawyers] "At some future point we can respond."

Mark -- we are supportive of Minnesota type approach in the four separately settled states -- but we need to figure out how to avoid unfairly burdening SPMs.

Bob B&W -- we ask for your support with the Florida AG. Transshipment bills could be far more effective in 4SSS now that complementary legislation is in place.

Mark - Farmers said they joined the MSA because allocable share succeeded in their primary states. Farmers is testifying at hearing in Kentucky. Two largest members of CITMA are importers.

Henry -- Speaker in Kentucky sent word that allocable share should be held because alternative proposal (supported by PM USA -- odd) is imminent.

Meyer -- need to communicate not only that bill is not NAAG endorsed, but that it is not ready for prime time.

Ressler -- the "NAAG" draft was circulated with a transmittal that said this is a very rough draft not ready for prime time. It had no endorsement whatsoever. Tony Troy has a draft that changes only a few words in allocable share bill -- but makes big changes.

Mark -- one more issue -- legislation in the 4SSS. We need a solution. Minnesota helped but SPMs screamed about unfairness. Commonwealth filed a 30 day notice. NAAG met all afternoon in Williamsburg and had subsequent conversations with SPMs. Jeff W is the conduit for contacts on this, and I explained to Jeff what the proposals were. They last contacted us before Christmas, and we have not gotten back to them. Their proposal has been with us for a month, and we have not responded.

Jeff heard about it last week and raised with the other companies Friday.

5

2086154417

Meyer wants the credit issue thrashed out by all parties at one time in one place.

Mark -- need a ceiling on amount SPMs can get credit for.  Cap on amount SPMs could sell in a state before suffering reduction in credit.

6      2086154418

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

XCALIBER INTERNATIONAL LIMITED,
L.L.C., ET AL

CIVIL ACTION

VERSUS

NO: 04-0069

RICHARD IEYOUB, ET AL

SECTION: "S" (4)

## PROTECTIVE ORDER

IT IS HEREBY ORDERED, with consent of all parties, that each of the parties, by itself or through its counsel, agrees to the terms of this Protective Order as provided herein, shall be governed by the following terms and condition in connection with the production of Confidential Information (as defined herein) in this action.

1.   Definitions.

a.   The term "Confidential Information" means any information, whether oral or in documentary or other tangible form, so designated by any producing person (as defined herein) that is either (i) derived from taxpayer information, or, (ii) derived from documents directed by the Master Settlement Agreement to be confidential information.

b.   The term "disclose" means to show, give, make available or communicate, in any fashion, to any person, any information, document, information concerning the content of any document, or any portion of the information containing in any document, furnished by any party or non-party in this action.

1

c.   The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a), Fed.R.Civ.P. A draft or non-identical copy is a separate document within the meaning of the term.

d.   The term "person" means any natural person, corporation, partnership, sole proprietorship, group, association, organization, business entity, governmental body, or agency.

e.   The term "producing person" means any person, whether a party or nonparty, who produces any information, whether oral or in documentary or other tangible form in response to any discovery method permitted by the Federal Rules of Civil Procedure.

f.   The term "qualified person" in addition to the parties themselves, includes (i) outside counsel engaged to represent one of the parties to this action, including necessary legal assistants and clerical employees actually assisting such counsel and outside vendors engaged by such counsel to scan and/or code documents; (ii) in-house lawyers who are engaged in preparation for trial and trial of this litigation, including necessary legal assistants and clerical employees actually assisting these persons; (iii) outside independent experts and consultants of the parties who are formally retained by and actively assisting counsel identified in (i) and (ii) in this action and any necessary assistants and clerical employees under their direct supervision and employed by them or their employer or organization; and (iv) the court reporters.

2

2.    Any Confidential Information that is supplied in documentary or other tangible form may be designated by the producing person or producing party as Confidential Information by placing or affixing on each page of such document, or on the face of such thing, the legend CONFIDENTIAL.  In the case of documents or information produced in any electronic form, the legend CONFIDENTIAL , when placed or affixed on the face of such thing, shall designate such thing and information therein to be Confidential Information.  In the case of documents produced prior to the entry of this Order, the producing person shall have fifteen (15) days from the date of entry of this Order to designate in writing each document containing Confidential Information and each such designated document shall thereafter be treated as Confidential Information under the terms of this Order.

3.    If the receiving party disagrees with the confidentiality designation by the producing person, said receiving party shall notify counsel for the party producing person in writing.  Counsel for the producing person and the receiving party shall attempt to resolve such dispute within five (5) business days after receipt of the receiving party notice.  If the dispute cannot be resolved, the party seeking disclosure, upon no fewer than three (3) business days written notice to the producing person, may, by specifying the basis on which it claims that such designation is improper or that such disclosure is appropriate, seek a ruling from the Court that the information is not properly designated. Pending a determination by the Court, such information shall be treated as Confidential Information under this Order.

4.    All qualified persons in possession of Confidential Information shall execute Exhibit B Qualified Persons Bound by Protective Order and, in so doing, shall provide an exhaustive list of all individuals who meet the definition of a qualified person and to whom Confidential Information may be disclosed under this Order. Prior to any disclosure, qualified

3

persons shall read this Order and (i) agree to be bound by the terms thereof, (ii) agree to maintain said information in confidence, (iii) agree not to disclose Confidential Information to anyone other than as set forth herein.

5.    Any summary, compilation, notes, copy or copies containing Confidential Information shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, copy or copies is derived. Any such summary, compilation, notes, copy or copies which constitute attorney work product shall not be subject to the return or destruction provisions in paragraph 15 of this Order.

6.    During a deposition or pretrial evidentiary hearing in this matter, if a question is asked during that would result in the disclosure of confidential information, a party may designate the deposition answer as confidential information under this Order, prior to the answer being given, by stating on the record that the answer is "CONFIDENTIAL." Once an answer to a deposition question is designated as confidential information under this Order, only qualified persons may be in attendance. The portion of the deposition transcript corresponding to the designated answer shall be marked by the reporter and videographer as "CONFIDENTIAL." Each party shall cause each copy of the those portions of the transcript in its custody or control or that comes into its custody or control to be immediately marked as "CONFIDENTIAL." A party may also stamp "Portions of the Deposition Contain Confidential Information" on the front of the deposition transcript, or alternatively segregate that portion of the deposition testimony designated as containing Confidential Information.

7.    Disclosure of Confidential Information may be made to experts who are formally retained by and actively assisting counsel identified in 1(f)(i) and (ii) in the preparation and trial of this action. The party retaining any such expert shall provide opposing counsel with the name

4

of said expert on Exhibit B Qualified Persons Bound by Protective Order or, if Exhibit B has been previously executed, on an addendum thereto.

8.    In the event any document is produced that the producing person later claims is protected by attorney-client privilege, work product doctrine or other privilege or immunity, the receiving party shall, within five (5) business days of receipt of a written request by the producing person, return the original to the producing person, destroy all copies thereof, as well as, all notes, memoranda or other documents that summarize, discuss or quote the document, and delete any copy of the document, or any portion thereof, from any word processing or data base tape or disk it maintains.    Production of privileged, work-product-protected, or otherwise immune documents in the course of discovery in this action shall not constitute a waiver of any privilege, work product protection or immunity, either as to the produced document or as to any other documents or communications.    Return of a document for which the producing person has asserted a claim of privilege, work-product-protection, or immunity under this paragraph shall be without prejudice to the receiving party  right to seek an order from the Court directing production of the document on the ground that the claimed privilege, work product protection or immunity is invalid or inapplicable, provided, however, that mere production of the document in the course of this action shall not be a ground for asserting waiver for the privilege, protection or immunity

9.    This Order is entered solely for the purpose of facilitating the exchange of information between the parties to this action without unnecessary involvement of the Court. Nothing in this Order, shall be deemed to have the effect of (i) an admission or waiver, including waiver under the rules of evidence, by any party or other subscriber to this Order; (ii) altering the

confidentiality or non-confidentiality of any such information; or (iii) altering any existing obligation of any party or subscriber, or the absence of such obligation.

10.    This Order shall be without prejudice to the right of any party or other subscriber to this Order (i) to bring before the Court, at any time, the question of whether any particular document or information is Confidential Information or whether its use otherwise should be restricted or (ii) to present a motion to the Court under rule 26(c), Fed. R. Civ. P., for a separate protective order as to any such particular document or information, including restrictions differing from those specified herein. This Order shall not be deemed to prejudice any party in any way in any future application for modification of this Order.

11.    Items Filed with the Court

a.    Prior to the filing of documents containing information determined by a producing party to be Confidential Information, the filing party must submit the documents in the form of an *ex parte* motion to the Court for review and approval of the documents' confidential status, along with notice to opposing counsel. The producing person making any such submittal to the Court shall place or affix on each page of any submitted documents, or, in the case of information produced in any electronic form, on the face of any submitted disc, drive, or other electronic storage media, the legend CONFIDENTIAL (uppercase or lowercase). Documents or information which, upon review, are confirmed as Confidential Information subject to this Order shall be declared as such by separate Order of the Court. A receiving party seeking to challenge the confidentiality of any such confirmed documents or information must do

6

so by filing a motion before the Court within thirty (30) days after receipt of the Confidential Information in question. Documents or information which, upon review, the Court has refused to confirm as Confidential Information cannot be filed under seal.

b.    All documents, including pleadings, motions, and other papers, containing Confidential Information that has been confirmed confidential by the Court shall be filed in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of this action, the word CONFIDENTIAL, and a statement substantially in the following form:

### FILED UNDER SEAL

By order of the Court, entered on [date], this envelope is to remain sealed, and the Clerk of the Court shall not reveal the contents thereof to any person until further order of this Court.

All information subject to confidential treatment in accordance with the terms of this Order that is filed with the Court, and any pleadings, motions or other papers filed with the Court disclosing any Confidential Information, shall be filed and kept under seal until further order of the Court. Where possible, only confidential portions of filings with the Court shall be filed under seal.

12.    The parties that produce information subject to this Order, shall attempt to agree upon procedures to prevent disclosure of Confidential Information at any hearing or trial. Prior to such hearing or trial, the parties shall submit any disputes relating thereto to the Court for resolution.

13.    If Confidential Information in the possession, custody or control of any qualified person is sought by subpoena, request for product on of documents, interrogatories, or any other form of discovery request or compulsory process, including any form of discovery request or compulsory process of any court, administrative or legislative body, or any other person or tribunal purporting to have authority to seek such information by compulsory process or discovery request, including third parties, the receiving party to whom the process or discovery request is directed, shall (i) on or before the fourth business day after receipt thereof, give written notice of such process or discovery request together with a copy thereof, to counsel for the producing person; and (ii) cooperate to the extent necessary to permit the producing person to seek to quash or modify such process or discovery request.

14.    Upon final termination of this action, including all appeals, all parties and experts and consultants shall (i) at the option of the producing person, return to the producing person or destroy all originals of material produced and designated as Confidential Information and all identical copies, whether in whole or in part, of such documents, and (ii) destroy all copies thereof, as well as all notes, memoranda, or other documents that summarize, discuss, or quote materials produced and designated as Confidential Information, except that, with respect to word processing and database tapes and disks, such tapes or disks shall be destroyed or erased to the extent practicable. Notwithstanding the above, outside counsel for each party shall be entitled to retain attorney work product, and copies of any documents that have been filed with the Court or admitted into evidence and that contain or refer to information designated as Confidential Information, provided that all such documents shall remain subject to this Order. Counsel of record for the parties shall certify in writing to each producing person that it has complied with the foregoing provisions.

8

15.    This Order shall survive and remain in full force and effect after termination of

this action.

DATED:    This 17th day of November 2006

SO ORDERED:

_____

UNITED STATES MAGISTRATE JUDGE

Respectfully Submitted,

_____

Kyle M. Keegan (LA No.19942)
Christopher D. Kiesel (LA No. 26360)
J. Brian Juban (LA No. 28106)
ROY, KIESEL, KEEGAN & DeNICOLA
2355 Drusilla Lane
Baton Rouge, LA 70809
Telephone: (225) 927-9908
Facsimile: (225) 926-2685

**COUNSEL FOR PLAINTIFF, XCALIBER
INTERNATIONAL LIMITED, LLC**

Respectfully Submitted,

_____

Thomas L. Enright (Bar Roll # 25040)
Assistant Attorney General
Louisiana Department of Justice
P.O. Box 94005
1885 North 3rd Street, 4th Floor
Baton Rouge, LA 70804-9005
(225) 326-6423 / 6072 (Fax)

**COUNSEL FOR DEFENDANT, CHARLES C. FOTI,
JR.**

9

## EXHIBIT A

### Non-party Agreement and Acknowledgment to
### Be Bound by Protective Order

[Name of non-party] hereby acknowledges that he/she has read and agrees to be

bound by all the terms of the attached Protective Order, dated _____ , 2006, in

the action captioned, Xcaliber International Limited, LLC v. Charles C. Foti, Jr., in his capacity

as Attorney General fro the State of Louisiana, Case No. 04-0069. **[Non-party]** further agrees to

consent to the jurisdiction of the United States District Court for the Eastern District of

Louisiana for the purposes of enforcement of the Protective Order.

DATED:_____ , 2006

Name and Address of Non-party:

_____

_____

_____

_____

Signature of Non-party or Qualified Representative:

_____

10

## EXHIBIT B

## Qualified Persons Bound by Protective Order

Undersigned counsel does hereby certify, on behalf of [signatory to Protective Order], that the following identified individuals constitute an exhaustive list of all individuals who meet the definition of ualified person and to whom any Confidential Information may be disclosed as provided in the attached Protective Order, dated _____ , 2006, entered by the United States District Court for the Eastern District of Louisiana in the action captioned, Xcaliber International Limited, LLC v. Charles C. Foti, Jr., in his capacity as Attorney General for the State of Louisiana, Case No. 04-0069. All individuals listed have, prior to any disclosure of Confidential Information, read the attached Protective Order and have agreed to be bound by the terms thereof.

| Individual | Position of Employment or Reason for Qualified Person Status |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Signature of Counsel for [signatory to Protective Order]:

_____Date:

11